WO

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Armando Coronado, et al., | No. CV-07-1089-PHX-SMM |
| Plaintiffs, | |
| v. | **MEMORANDUM OF DECISION AND ORDER** |
| Janet K. Napolitano, Governor, et al., | |
| Defendants. | |

Plaintiffs filed this lawsuit challenging the Arizona statutory scheme governing the right to vote of those convicted of felonies. Defendants have moved to dismiss the Complaint for failure to state a claim for which relief can be granted. (Dkts. 22, 33.)[1] Having considered the parties arguments and memoranda of law, the Court now issues this Memorandum of Decision and Order.

### BACKGROUND

The Arizona Constitution provides that "[n]o person . . . convicted of treason or felony [shall] be qualified to vote at any election unless restored to civil rights." Ariz. Const. art. VII, § 2; see also A.R.S. § 14-904 ("A conviction for a felony suspends the following civil rights of the person sentences: 1. The right to vote."). A felony is "an

---

[1] Defendant Napolitano filed the initial motion to dismiss (Dkt. 22). Defendant Brewer later filed her motion to dismiss, incorporating by reference the legal arguments stated in Defendant Napolitano's motion (Dkt. 33). The Court will cite Defendant Napolitano's motion (Dkt. 22) as Defendants' Motion to Dismiss, reflecting the inclusion of Defendant Brewer.

offense for which a sentence to a term of imprisonment in the custody of the state department of corrections is authorized by any law of this state." A.R.S. § 13-105(16). A person convicted of a single felony automatically regains any civil rights that were lost or suspended by the conviction if the person both: (1) completes a term of probation or receives an absolute discharge from imprisonment; and (2) pays any fine or restitution imposed. Id. at § 13-912. Persons convicted of more than one felony must apply to the superior court to have their civil rights restored. Id. at § 13-908.

Plaintiffs Armando Coronado and Michael Garza were each convicted of a felony drug offense. (Compl. ¶¶ 7, 9.) Plaintiff Joseph Rubio was convicted of attempted aggravated domestic violence. (Id. at ¶ 8.) Plaintiffs Michele Convie and Raymond Lewis, Jr. were each convicted of multiple felony drug offenses. (Id. at ¶ 10, 11.) Plaintiffs Coronado, Garza, and Rubio allege that they have completed their terms of probation or have received an absolute discharge from imprisonment, but remain ineligible for automatic restoration of their voting rights because they have not paid the fines and restitution ordered by the courts. (Id. at ¶¶ 24, 30, 34.) They allege that the requirement that they pay these legal financial obligations ("LFOs")[2] before having their right to vote restored violates provisions of the United States and Arizona Constitutions, and section 1973h of Title 42 of the United States Code.[3] They are joined by Plaintiffs Convie and Lewis in alleging that disenfranchisement for the commission of non-

---

[2] Plaintiffs lump fines and restitution into a single category of "legal financial obligations," or "LFOs." (See, e.g., Compl. ¶ 1, 3, 71; see also Pls.' Resp. at 1, 14.) Fines and restitution are interrelated in a person's sentence, and a restitution lien is created in favor of the state for the total amount of restitution, fine, and other charges. A.R.S. § 13-804(J). As the Plaintiffs do not distinguish between fines and restitution or argue that they should be analyzed separately, the Court treats addresses them both as a single part of a person's sentence.

[3] Although Counts One and Three only name Plaintiffs Coronado and Rubio, the Complaint's factual background indicate that Plaintiff Garza means to join in those claims.

- 2 -

common law felonies violates provisions of the United States and Arizona Constitutions. Plaintiffs seek declaratory and injunctive relief, in addition to nominal damages.

Defendants Janet K. Napolitano and Janice K. Brewer seek to dismiss the Complaint on the grounds that it fails to state a claim for which relief can be granted. (Dkts. 22, 33.)  Plaintiffs filed a Response to the motion to dismiss, and Defendants filed a Reply thereto.[4]  The Court has subject matter jurisdiction of this matter under 28 U.S.C. §§ 1331, 1343(a), and 42 U.S.C. §§ 1971(d), 1983.  The Court may exercise supplemental jurisdiction under 28 U.S.C. § 1367(a) to hear claims under the constitution and laws of Arizona.  The Court has jurisdiction to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201, 2202.  Venue is proper in this district under 28 U.S.C. § 1391(b)(1).

## STANDARD OF REVIEW

To survive a motion to dismiss for failure to state a claim, "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true even if doubtful in fact." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965, __ U.S. __ (2007).  When deciding a motion to dismiss, all allegations of material fact in the complaint are taken as true and construed in the light most favorable to the plaintiff. W. Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

A court may dismiss a claim either because it lacks "a cognizable legal theory" or because it fails to allege sufficient facts to support a cognizable legal claim. SmileCare Dental Group v. Delta Dental Plan of Cal., Inc., 88 F.3d 780, 783 (9th Cir. 1996). "Dismissal without leave to amend is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." Polich v. Burlington N., Inc., 942 F.2d 1467, 1472 (9th Cir.1991). When exercising its discretion to deny leave to

---

[4] Defendants requested oral argument in connection with their motion to dismiss. Having determined that the motion can be decided on the memoranda of law, the Court denies Defendants' request for oral argument.

- 3 -

amend, "a court must be guided by the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." United States v. Webb, 655 F.2d 977, 979 (9th Cir. 1981).

## DISCUSSION

In Counts One through Four, Plaintiffs Coronado, Garza, and Rubio assert that Defendants have abridged their right to vote by requiring that Plaintiffs pay fines and restitution before the franchise is restored. In Counts Five through Seven, all Plaintiffs assert that Defendants have abridged their right to vote by disenfranchising them as a result of convictions for non-common law felonies. Defendants seek to dismiss each of these claims. The Court will address these claims individually.

**A. Count One - Fines and Restitution Violate the Equal Protection Clause**

Count One alleges that requiring payment of fines or restitution as a precondition for restoring their voting rights unlawfully denies Plaintiffs equal protection of the law, in violation of the Fourteenth Amendment to the United States Constitution. (Compl. ¶ 59.) Defendants seek to dismiss Count One, arguing that the Fourteenth Amendment expressly recognizes states' rights to disenfranchise felons. (Defs.' Mot. at 5.) Defendants base their argument on the "affirmative sanction" of felon disenfranchisement found in the Fourteenth Amendment itself. Richardson v. Ramirez, 418 U.S. 24, 54 (1974)

The Fourteenth Amendment provides:

> Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, ***except for participation in rebellion, or other crime,*** the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

U.S. Const. amend. XIV, § 2 (emphasis added). Based on this language, the

1  Supreme Court found that states could exclude from the franchise convicted felons who
2  have completed their sentences and paroles without violating the Equal Protection Clause
3  of the Fourteenth Amendment, § 1. Richardson, 418 U.S. at 56. The Arizona
4  Constitution provides that "[n]o person who is adjudicated an incapacitated person shall
5  be qualified to vote at any election, nor shall any person convicted of treason or felony, be
6  qualified to vote in any election unless restored to civil rights. Ariz. Const. art. VII, §
7  2(C).

8  Plaintiffs contend that Count One raises a claim not addressed in Richardson—that
9  of felon "re-enfranchisement." Plaintiffs assert that this distinction was recognized in
10 Bynum v. Conn. Comm. on Forfeited Rights, 410 F.2d 173 (2d Cir. 1969). (Pls.' Resp. at
11 4-5.) Having chosen to restore the right to vote of persons who have completed probation
12 or have been discharged from imprisonment, the state cannot discriminate against
13 indigent felons by requiring payment of fines or restitution as a condition of re-
14 enfranchisement. (Id. at 9.)

15 Plaintiffs' argument presumes that fines and restitution are requirements wholly
16 separate from a felon's sentence.[5] From that presumption Plaintiffs argue that the
17 imposition of further punishment, based on their inability to pay the fines, violates equal
18 protection. Plaintiffs fail to recognize that Arizona courts are authorized to impose fines
19 and restitution as part of a felon's sentence. A.R.S. §§ 13-801(A), 13-808. The Arizona
20 law prohibits all felons from regaining the right to vote until they complete the terms of
21 their sentence—including the payment of any fines or restitution. Id. at § 13-912. Once
22 the entire sentence is complete, Plaintiffs' civil rights, including the right to vote, are
23 automatically restored. Id. This is unlike the situation in Bynum, in which the state
24 required an ex-felon to pay a $5.00 fee before petitioning the commission for restoration
25 of his voting rights. See Bynum, 410 F.2d at 174-75.

---

[5] Plaintiffs do not allege that fines or restitution were not or should not have been included as part of their sentences.

Other authorities relied on in Plaintiffs' Response are similarly inapt. Plaintiffs do not allege that the state is holding them in confinement beyond the maximum statutory term because they cannot pay court-imposed costs, as prohibited by Williams v. Illinois, 399 U.S. 235 (1970), nor do they allege revocation of probation for failure to pay a fine which they cannot pay, as prohibited by Bearden v. Georgia, 461 U.S. 660 (1983). Plaintiffs' analogy to a law extending the right to vote to 17-year olds, provided they pay some fee, is also misguided. For one thing, that analogy does not account for the "re-enfranchisement" distinction which Plaintiffs draw and rely on to distinguish Richardson; a 17-year old would not be seeking to recover a civil right of which the minor had been stripped. Moreover, the law at issue does not impose a "fee," but rather requires completion of the entire sentence imposed. The Arizona statutes do not violate the Equal Protection Clause because they do not discriminate against certain individuals or classes of felons. All felons must complete the terms of their sentences in order to regain the franchise, including the payment of fines or restitution. A.R.S. § 13-912.

The Court in Richardson found that felon disenfranchisement did not violate the Equal Protection Clause, and therefore did undertake a traditional equal protection examination. Even if Arizona's "re-enfranchisement" scheme is distinguished from the "disenfranchisement" scheme at issue in Richardson, as Plaintiffs contend, Count One would nonetheless fail to state a claim. Under traditional equal protection jurisprudence, the level of scrutiny afforded to discriminatory laws depends on whether the right allegedly burdened is a "fundamental right" and whether the law targets a "suspect class." Plaintiffs do not allege that they are members of a suspect class, but assert that strict scrutiny must apply because the right to vote is a fundamental right. (Pls.' Resp. at 10.) Having been legitimately disenfranchised, Plaintiffs can no longer claim that their right to vote is fundamental. See Richardson, 418 U.S. at 54-56. Rational basis review would apply because felons have no fundamental right to vote. Richardson, 418 U.S. at 54 ("[T]he exclusion of felons from the vote has an affirmative sanction in § 2 of the

Fourteenth Amendment, a sanction which was not present in the case of the other restrictions on the franchise which were invalidated in the cases on which respondents rely."). Therefore the re-enfranchisement scheme would receive rational basis review. Madison v. Washington, 163 P.3d 757, 767-68 (Wash. 2007), accord Owens v. Barnes, 711 F.2d 25, 27 (3d Cir. 1983); see also Williams v. Taylor, 677 F.2d 510, 514-15 (5th Cir. 1982).

A law reviewed under the rational basis standard must be rationally related to a legitimate governmental interest. United States v. Hancock, 231 F.3d 557, 566 (9th Cir. 2000). "The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it." Id., quoting Heller v. Doe, 509 U.S. 312, 320 (1993). In this case, the fine provisions serve the interests in punishing and deterring criminal activity. Polykoff v. Collins, 816 F.2d 1326, 1337 (9th Cir. 1987). A goal of restitution requirements is rehabilitation of the convicted person, as the requirements force an offender to recognize and accept responsibility for the consequences of the criminal activity. State v. West, 845 P.2d 1097, 1104 (Ariz. App. 1992). Including these financial obligations in a convicted felon's sentence is rationally related to these legitimate governmental interests. Therefore Defendants' motion to dismiss Count One will be granted.

**B. Count Two - Fines and Restitution Constitute a Poll Tax and Violate the Twenty-Fourth Amendment and 42 U.S.C. § 1973h**

Count Two alleges that requiring payment of fines or restitution imposed in order to regain the right to vote is invalid as a poll tax under the Twenty-Fourth Amendment and 42 U.S.C. § 1973h. (Compl. ¶ 64.) Defendants assert two reasons why Count Two fails to state a claim. First, no right to vote exists for a poll tax to abridge because Plaintiffs were disenfranchised by reason of their convictions. (Defs.' Mot. at 8.) Second, requiring felons to pay financial costs associated with their crimes in order to regain suspended civil rights does not amount to a tax. (Id.)

As discussed above, a state may disenfranchise felons without running afoul of the Constitution. U.S. Const. amend. XIV, § 2; Richardson, 418 U.S. at 54. Having disenfranchised felons, a state may refuse to re-enfranchise felons entirely, or permit felons to regain the franchise only after completing their sentences. Accordingly, "[r]estoration of civil rights is a creature of statute." State v. Buonafede, 814 P.2d 1381, 1383 (Ariz. 1991). In this case, the fines or restitution are part of Plaintiffs' sentences. A.R.S. § 13-801(A); (Compl. ¶ 17.). Plaintiffs do not allege that the fines or restitution should be not be part of their sentences, nor do they allege that these obligations have been paid in full. (Cf. Compl. ¶¶ 23, 29, 33.) Therefore Defendants correctly assert that Plaintiffs have no right to vote for the Arizona statutes to abridge.

The question remains whether Plaintiffs state a claim on the grounds that the fines and restitution requirement *denies* them the right to vote "for reason of failure to pay a poll tax or any other tax." U.S. Const. amend. XXIV. That inquiry turns on whether the fines and restitution requirement constitutes a "tax," as Plaintiffs allege that their civil rights would otherwise be automatically restored under A.R.S. § 13-912.

"Poll tax" is defined as "a fixed tax levied on each person within a jurisdiction. Black's Law Dictionary 1498 (8th ed. 2004). "Poll taxes are laid upon persons . . . to raise money for the support of government or some more specific end." Breedlove v. Suttles, 302 U.S. 277, 281 (1937), overruled on other grounds by Harper v. Virginia State Board of Elections, 383 U.S. 663 (1966). Although a state may not make "the affluence of the voter or payment of any fee an electoral standard," states do have "the power to fix qualifications." Harper, 383 U.S. at 666, 668. States may permissibly fix as a qualification for voting the requirement that a persons not have been convicted of a felony. Richardson, 418 U.S. at 56. It follows that, having decided to re-enfranchise ex-felons, Arizona may permissibly fix as a qualification the requirement that those individuals complete the terms of their sentences. See A.R.S. § 13-912. The Arizona laws do not make ability to pay "an electoral standard," but limit re-enfranchisement to

those who have completed their sentences—including the payment of any fine or restitution imposed.  Id.  Again, Plaintiffs do not allege that fines or restitution are an impermissible part of their sentences.  Defendant's motion to dismiss Count Two will be granted.

### C. Count Three - Fines and Restitution Violate Article 2, § 21 of the Arizona Constitution

The Arizona Constitution states that "[a]ll elections shall be free and equal, and no power, civil or military, shall at any time interfere to prevent the free exercise of the right of suffrage."  Ariz. Const. art. II, § 21.  Count Three alleges that denial of Plaintiffs' right to vote based upon failure or inability to pay fines or restitution unlawfully denies them the free exercise of the right to suffrage.  (Compl. ¶ 67.)  Defendants move to dismiss Count Three on the grounds that Plaintiffs do not have the right to vote under the Arizona Constitution, and requiring completion of Plaintiffs' sentences therefore does not violate Article 2, § 21.  (Defs.' Mot. at 10.)

Arizona Constitution Article 7, § 2(C) directly contradicts Article 2, § 21 because the former deprives convicted felons of the franchise.  Ariz. Const. art. VII, § 2(C)(" . . . nor shall any person convicted of treason or felony, be qualified to vote in any election unless restored to civil rights.").  When separate parts of a constitution are seemingly in conflict, it is the duty of the court to harmonize both so that the constitution is a consistent workable whole.  State ex. rel. Nelson v. Jordan, 450 P.2d 383, 386 (Ariz. 1969).  As discussed, a state may choose to disenfranchise convicted felons.  U.S. Const. amend. XIV, § 2; Richardson, 418 U.S. at 56.  In order to harmonize the Arizona Constitution and make it a workable whole, Article 2, § 21 must be read to apply only to those citizens who have the right of suffrage.  As Plaintiffs do not have this right, Count Three fails to state a claim for which relief can be granted.

//

//

**D. Count Four - Fines and Restitution Violate the Privileges and Immunities Clauses of the Federal and State Constitutions**

In Count Four, Plaintiffs allege a violation of the privileges and immunities clauses of the federal and state constitutions. (Compl. ¶ 71.) The federal Constitution provides that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States . . . ." U.S. Const. amend. XIV, §1. The Arizona Constitution states that "[n]o law shall be enacted granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations." Ariz. Const. art. II, § 13. Defendants move to dismiss Count Four on the grounds that Plaintiffs have no right to vote and thus the privileges and immunities clauses do not apply. (Defs.' Mot. at 11-13.) Regarding the Arizona Constitution, Defendants assert that Plaintiffs are not similarly situated to citizens having the right to vote, and that Plaintiffs are afforded the same privileges and immunities as other similarly situated individuals. (Id. at 11.)

Plaintiffs do not cite, nor has the Court discovered, any case stating that the right to vote in federal elections is a privilege or immunity of the citizens of the United States. The Court accepts for purposes of this motion that the right to vote is a privilege or immunity of the citizens of the United States.[6] Even so, Plaintiffs' claims under the Privileges or Immunities Clause of the Fourteenth Amendment fails for the same reasons as their claim under the Equal Protection Clause (Count One). The "privilege" of ex-felons to vote in federal elections, like the right to vote, can be suspended without

---

[6] The only Supreme Court case to enumerate a specific privilege or immunity involved the "right to travel." Saenz v. Roe, 526 U.S. 489, 502-03 (1999). Thus Saenz "breathe[d] new life into the previously dormant Privileges and Immunities Clause of the Fourteenth Amendment . . . a provision relied upon for only the second time since its enactment 130 years ago." Id. at 511 (Rehnquist, C.J., dissenting). However, the right to vote in federal elections fits the general definition of privileges and immunities, as it is a right "which [owes its] existence to the Federal government, its National character, its Constitution, or its laws." Slaughter-House Cases, 83 (16 Wall.) 36, 79 (1872).

violating the Constitution. Richardson, 418 U.S. at 56. Thus Plaintiffs cannot claim that the privilege has been "abridged" in violation of the Privileges or Immunities Clause of the Fourteenth Amendment. To the extent the re-enfranchisement scheme does abridge Plaintiffs' right to vote, it is rationally related to a legitimate governmental interest as discussed regarding Count One.

Plaintiffs' claim under the Arizona Constitution also parallels their claim under the Equal Protection Clause. "The purpose of [Article 2, § 13] is to secure equality of opportunity and right to all persons similarly situated." Prescott Courier, Inc. v. Moore, 274 P. 163, 165 (Ariz. 1929). "The Equal Protection clauses of the Fourteenth Amendment and the state constitution have for all practical purposes the same effect." Westin Tucson Hotel Co. v. State Dep't of Revenue, 936 P.2d 183, 189 (Ariz. App. 1997), quoting Valley Nat. Bank of Phoenix v. Glover, 159 P.2d 292, 299 (Ariz. 1945). As discussed in Count One, the Arizona re-enfranchisement scheme presents no equal protection violation, and is rationally related to a legitimate government interest in deterring, punishing, and rehabilitating criminals. Moreover, Article 2, § 13 guarantees only that equality of opportunity is secured to all persons "similarly situated." Stults Eagle Drug Co. v. Luke, 62 P.2d 1126, 1130 (Ariz. 1936); Lindsay v. Cave Creek Outfitters, L.L.C., 88 P.3d 557, 564 (Ariz. App. 2003). Plaintiffs, like all convicted felons, must complete the terms of their sentences in order to have their civil rights restored. A.R.S. § 13-912. Therefore the statutory scheme does not violate Article 2, § 13 of the Arizona Constitution.

Plaintiffs assert in their Response that the Court must look beyond the face of the statute and inquire whether the statutes have a disparate impact on certain groups. (Pls.' Resp. at 18-19.) This inquiry is purportedly necessary because "plaintiffs intend to prove that Arizona's [fine or restitution] requirement negatively and disproportionately impacts indigent people." (Id. at 19.) As the Complaint does not include any allegation of a disparate impact, the Court will not undertake any such further inquiry. Defendants'

motion to dismiss Count Four will be granted.

### E. Counts Five, Six, and Seven - Disenfranchising Persons Convicted of Non-Common Law Felonies Violates the Federal and State Constitutions

The Fourteenth Amendment states that the right to vote shall not be "denied . . . or in any way abridged, except for participation in rebellion, *or other crime*." U.S. Const. amend. XIV, § 2 (emphasis added). Counts Five, Six, and Seven are each based on the notion that "other crime" should be read as distinguishing between common law and non-common law felony convictions. From that distinction, Plaintiffs claim that Arizona's felon disenfranchisement scheme violates the Equal Protection Clause of the federal Constitution (Count Five), Arizona Constitution Article 2, § 21 (Count Six), and the privileges and immunities clauses of the federal and state constitutions (Count Seven). Defendants seek to dismiss Counts Five through Seven on the basis that no such distinction exists. (Defs.' Mot. at 13-17.) Plaintiffs respond that legislative history of the Fourteenth Amendment demonstrates that "other crime" refers only to common law felonies.[7] (Pls.' Resp. at 21-26.)

Plaintiffs' argument finds no support in either a plain reading of § 2 or principles of statutory interpretation. The Court in Richardson undertook to determine whether the relevant language of § 2—"except for participation in rebellion, or other crime"—was "intended to have a different meaning than would appear from its face." Richardson, 418 U.S. at 43. After first noting the problem of interpreting the "intention" of a constitutional provision, the Court observed that "legislative history bearing on the meaning of . . . § 2 is scant indeed." Id. Nonetheless, "this language was intended by

---

[7] Plaintiffs also assert that courts should re-examine the constitutionality of disenfranchising persons convicted of crimes because the practice has resulted in racial disparities. (Pls.' Resp. at 27-29.) The Complaint does not contain this allegation, nor is a claim of racial discrimination stated. Moreover, the statistics offered by Plaintiffs to support their assertion are not properly before the Court. Cf. Fed. R. Evid. 201. Therefore the Court will not address Plaintiffs' assertion.

Congress to mean what it says." Id. The Court concluded that "[w]hat little comment there was on the phrase in question here supports a plain reading of it." A plain reading of § 2 admits of no distinction between common law and non-common law felonies. Thus the language of § 2 means what it says—persons convicted of crimes may be excluded from the franchise.

"Where the language is plain and admits of no more than one meaning, the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion." Caminetti v. United States, 242 U.S. 470, 485 (1917); see also Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004). This rule of statutory interpretation notwithstanding, the Court will address Plaintiffs' arguments for their reading of § 2. Plaintiffs contend that provisions in legislation enacted contemporaneous to the Fourteenth Amendment provide "convincing evidence" that Congress intended "other crime" to refer to common law felonies. (Compl. ¶¶ 36-42; Pls.' Resp. at 25.) For example, the Readmission Act for Arkansas contained the "fundamental condition" that its state constitution "never be so amended or changed as to deprive any citizen or class of citizens the right to vote . . . except as a punishment for such crimes as are now felonies at common law." (Compl. 41, citing 15 Stat. 71.)[8] In essence, Plaintiffs argue that because Congress elsewhere specified "felonies at common law," that language should be imported where Congress did not so specify.

Such a technique runs counter to principles of statutory interpretation, and serves only to undermine Plaintiffs' position. First, it demonstrates that where Congress intended to specify common law felonies, it so stated. Second, the acts cited by Plaintiffs dealt with the readmission of former Confederate states, whereas the Fourteenth Amendment applies to all states in the Union. Thus the varying language need not be "harmonized" as Plaintiffs contend because the different provisions address different

---

[8] Plaintiffs do not allege that the Arizona's admission to the Union required that it disenfranchise only those individuals convicted of common law felonies.

- 13 -

1  subjects. (Cf. Defs.' Resp. at 25.) Assuming that § 2 and the Reconstruction and
2  Readmission Acts address the same subject, a plain reading of § 2 "gives effect to both"
3  provisions, as is the duty of the courts. Morton v. Mancari, 417 U.S. 535, 551 (1974).

4       Plaintiffs provide no case law to contradict this conclusion, and other decisions
5  addressing this issue further support a plain reading of "other crime." The California
6  scheme upheld in Richardson disenfranchised persons convicted of "infamous crimes" or
7  "a felony." 418 U.S. at 27-30. This resulted in the disenfranchisement of a person
8  convicted of drug possession, a crime which Plaintiffs allege was not a felony at common
9  law. Id. at 32; Compl. ¶ 43. This prompted another district court to note, in considering a
10 distinction between common law and non-common law felonies, "the Supreme Court,
11 however, apparently gave no import to this distinction, and this court shall do the same."
12 Perry v. Beamer, 933 F. Supp. 556, 559-60 (E.D. Va. 1996) (granting motion to dismiss).
13 Yet another court observed that "as the common law developed the meaning of the word
14 'felony' changed." Merritt v. Jones, 533 S.W.2d 497, 501 (Ark. 1976) (declining to read
15 "felony at common law" into the word "felonies" as used in disenfranchisement law).

16      Based on the foregoing, the Court finds the phrase "other crime" is not limited to
17 felonies at common law. Therefore Count Five fails to state a claim for relief under the
18 Equal Protection Clause. Plaintiffs do not assert a claim under the Arizona Constitution
19 independent of their interpretation of "other crime." The Complaint alleges that the
20 following language from Article 7, §2(C) has remained unchanged since the original
21 Arizona constitution: ". . . nor shall any person convicted of treason or felony, be
22 qualified to vote at any election unless restored to civil rights." (Compl. ¶¶45-46.) As
23 Counts Six and Seven require interpreting "other crime" as "felonies at common law,"
24 they also fail. (See Pls.' Resp. at 29-30.) Defendants' motion to dismiss Counts Five
25 through Seven will be granted.
26 //
27 //
28

**CONCLUSION**

Counts One through Four rely on the assumption that fines and restitution orders constitute a "fee" separate from and in addition to a convicted felon's sentence. For the reasons provided above, this assumption is in error and Plaintiffs therefore fail to state a claim for which relief can be granted. Plaintiffs' argument that the phrase "other crime" in § 2 of the Fourteenth Amendment should be read as encompassing only those crimes which were felonies at common law is also in error. Counts Five through Seven therefore also fail to state a claim.

These conclusions also dispose of the claims against Defendants F. Ann Rodriguez and Helen Purcell. Defendants Rodriguez and Purcell are the county recorders for Pima County and Maricopa County, respectively, and are sued in their official capacities for actions they took under color of law. (Compl. ¶¶ 14, 15.) Defendants Rodriguez and Purcell cancelled Plaintiffs from the voter registration rolls as directed by statute. A.R.S. § 16-165(A)(4), (C); see also A.R.S. §§ 16-164, 16-166. As Plaintiffs fail to state a claim that the felon disenfranchisement statutes abridge or deny their right to vote, Plaintiffs also fail to state a claim against Defendants Rodriguez and Purcell for acting pursuant to their statutory directive.

Accordingly,

**IT IS HEREBY ORDERED** granting Defendants' motion to dismiss (Dkt. 22, 33). The Complaint is dismissed without prejudice, and the Clerk shall terminate this action.

DATED this 22nd day of January, 2008.

Stephen M. McNamee
United States District Judge